UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FIRST FINANCIAL BANK, N.A,**

    **Plaintiff**

  v.            Case No. 1:11-cv-339-HJW

**GE COMMERCIAL DISTRIBUTION FINANCE CORP., a Delaware Corporation**

    **Defendant**

## ORDER

This matter is before the Court upon the plaintiff's "Motion for Summary Judgment" (doc. no. 17). Defendant opposes the motion and asks for summary judgment in its favor (doc. no. 19). Plaintiff has submitted "Proposed Findings of Fact and Conclusions of Law "(doc. no. 18) which defendant has highlighted as true, false, or irrelevant (doc. no. 23). Having carefully considered the record, including the pleadings, briefs, exhibits, and applicable law, the Court will <u>deny</u> the plaintiff's motion and <u>grant</u> summary judgment to defendant for the following reasons:

## I.  Facts and Procedural History

The relevant facts are undisputed. Plaintiff First Financial Bank, N.A. ("FFB"), loaned funds to non-party Lakota Watersports, Inc. ("Lakota"). On January 3, 2005, Lakota executed a "Security Agreement," thereby granting FFB a security interest in certain collateral, which plaintiff describes as "virtually all of Lakota's assets" (doc. no. 17-1 "Ex. A"). The Security Agreement describes the collateral as "all of Debtor's accounts, inventory, equipment, general intangibles, chattel paper, investment property, instruments, documents, letters of credit rights, supporting

obligations, all moneys, credits and other property. . . , and the proceeds . . ." (Id.). FFB perfected its security interest by filing a UCC Financing Statement of record with the Ohio Secretary of State on February 2, 2005, and a Continuation Statement on January 7, 2010 (doc. no. 17-2 "Ex. B").

Subsequently, Lakota obtained additional financing for the purchase of inventory from defendant GE Commercial Distribution Finance Corp ("CDF). CDF performed a UCC search in November of 2006 and identified FFB as a pre-existing competing creditor (doc. no. 17-7 "Ex. G," Def.'s Response to Interrog. No. 3). On November 28, 2006, CDF sent "Notification of Purchase Money Security Interest" letters ("PMSI notification") to various Lakota creditors, including FFB, advising that CDF would be financing the acquisition of additional inventory for Lakota (doc. nos. 17-5 "Ex. C"; 19-3 "Notices"). FFB acknowledges, and the record reflects, that FFB received the PMSI notification from CDF (doc. no. 17-7, Interrog. No. 3, noting that "Plaintiff received the Notice of PMSI on December 5, 2006 as evidenced by the return receipt, stamped CDF 00033).

On November 30, 2006, Lakota executed an Inventory Financing Agreement ("IFA") in favor of CDF (doc. no. 19-1 "Ex. A"). Under the IFA, CDF agreed to finance Lakota's acquisition of additional inventory, in exchange for a security interest in certain collateral owned by Lakota, as described in the IFA. Defendant filed a UCC Financing Statement to perfect its security interest in the collateral with the Ohio Secretary of State on November 30, 2006 (doc. nos. 17-6 "Ex. F"; 19-2).

With CDF financing, Lakota then obtained additional inventory, including the

three boats at issue here: 1) 2010 Mobius XLV, Serial No. ISRMX030B010; 2) 2010 Outback 201, Serial No. ISROB022K910; and 3) 2010 Sunsport 20V, Serial No. ISRCS002H910 (doc. nos. 2 at ¶ 5; and 17-7, Interrog. No. 2; 19 "Ex. E" Invoices). Lakota subsequently defaulted on its obligations to CDF by failing to make payments when due and by selling certain Inventory without paying CDF. On August 27, 2010, Lakota voluntarily surrendered the three boats to CDF as collateral. On September 1, 2010, CDF sent notices (including one to FFB) indicating it was going to liquidate the three boats by private sale after September 10, 2012 (doc. no. 19-4). Upon selling the boats, CDF received proceeds in the amount of $132,489.73 (doc. no. 19-5).

FFB indicates that Lakota also defaulted upon its obligations to FFB. On September 7, 2010, FFB sought and obtained a "Temporary Restraining Order . . ." (doc. no. 2-1 at 19) in the Butler County Court of Common Pleas in an attempt to prevent Lakota from "using, removing, selling, transferring, or otherwise disposing of" five specific boats, including the three boats at issue here. The Order indicated it would expire in 14 days, and the matter was scheduled for a hearing on September 13, 2010. As already noted, Lakota had already surrendered the three boats to CDF.

By letter of September 10, 2010, FFB demanded that CDF remit the liquidation proceeds (doc. no. 17-3 "Ex. C"). CDF countered that FFB was not entitled to any such proceeds and that CDF had a valid PMSI in the collateral (doc. no. 17-4 "Ex. D"). In its letter, CDF explained that it was not a party to the TRO action, and that, contrary to FFB's assertion, "[i]t has <u>not</u> been determined that FFB had a superior security interests in each of the boats" (doc. no. 17-4 at ¶ 3).

FFB filed suit against CDF on April 15, 2011 in the Butler County Court of Common Pleas, Case No. CV 2011-04-1213, seeking to recover the three boats or liquidation proceeds. CDF removed the case to federal court and filed an answer, asserting that it has a valid PMSI interest in the three boats and that such PMSI interest has priority over FFB's security interest. After discovery, FFB moved for summary judgment and filed "Proposed Findings of Fact and Conclusions of Law" (doc. nos. 17, 18). CDF responded (doc. no. 19), and FFB replied (doc. no. 20). On January 11, 2012, CDF filed its highlighted version of the proposed findings (doc. no. 23). This matter is now fully briefed and ripe for consideration.

## II. The Parties Arguments

Plaintiff FFB contends that no genuine disputes of material fact exist as to the validity of its properly-perfected security interest, which was recorded prior to the security interest of CDF. FFB argues that its lien constitutes the "first and best lien" upon the relevant collateral, and is therefore entitled to priority against CDF. Although FFB acknowledges that it received CDF's "Notification of PMSI" regarding the subject collateral, FFB contends that such notification was not signed or otherwise authenticated and did not provide a sufficiently "detailed" description of the collateral. FFB contends that the PMSI notification did not comply with the Ohio's statutory requirements and that CDF's PMSI is not entitled to priority. FFB seeks to recover any and all proceeds derived from the sale of the collateral (i.e. the three boats) by CDF, including, but not limited to, the sum of $132,489.73.

Defendant CDF responds that FFB's reading of Ohio's Uniform Commercial

Code is too narrow, out-of-date, and fails to recognize that the requirement to "authenticate" may be accomplished in several ways under Ohio R.C. § 1309.102(A)(7)(b). CDF asserts that its PMSI notification was properly authenticated under Ohio law and that FFB's claim of priority fails as a matter of law. CDF asks the Court to "deny Plaintiff's Motion for Summary Judgment in all respects and award Defendant Summary Judgment as a matter of law" (doc. no. 19 at 12).

III. Standard of Review

Initially, the Court notes that defendant CDF asks for summary judgment in its brief in opposition. The preferred practice is that motions should be asserted separately, not in responsive briefs. Given that the present parties have had sufficient opportunity for discovery and full briefing of the relevant issues regarding summary judgment, the Court will treat CDF's request as a cross-motion for summary judgment.[1]

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely

---

[1] Defendant correctly notes that "the law permits the granting of summary judgment for Defendant upon Plaintiff's motion" (doc. no. 19 at 1). Indeed, Rule 56(f)(1) provides that judgment may be granted to a nonmovant in appropriate circumstances.

> disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine disputes of material fact exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the case. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991) ("The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits"). When considering cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 248.

IV. Analysis

Under Ohio's Uniform Commercial Code ("UCC"), perfected security interests "rank according to priority in time of filing or perfection." Ohio R.C. § 1309.322(A)(1).

**Here, the parties agree on the chronological order of events. It is undisputed that FFB recorded its security interest on February 2, 2005 (doc. no. 17-2 "Ex. B") and that CDF recorded its PMSI interest on November 30, 2006 (doc. no. 17-7 "Ex. G"). Although FFB's contends that its security interest in the three boats is "senior" to CDF's security interest, this issue is not determinative here.**

**CDF points out that it sent FFB a "Notification of PMSI," which FFB admittedly received, and that its PMSI interest is superior to FFB's interest as a matter of law. Specifically, Ohio R.C. § 1309.324 provides PMSI-creditors with priority over a competing creditor with a security interest in the same collateral. The parties agree that ORC § 1309.324 governs here. Hence, FFB's argument about being "first to file" by itself provides no basis to grant summary judgment in FFB's favor.**

**FFB argues that CDF's PMSI notification was invalid because it was not signed and did not sufficiently describe the collateral. For PMSI-creditors to have priority over a competing creditor with a security interest in the same collateral, the PMSI-creditor must comply with the statutory requirements set forth therein. See Ohio R.C. § 1309.324, Official Comment, ¶ 2 (observing that the statute affords special priority to those purchase-money security interests that satisfy the statutory conditions). To obtain the benefit of the statute, the PMSI-creditor must send "an authenticated notification to the holder of the conflicting security interest." Ohio R.C. § 1309.324(B)(2).**

**FFB initially argued that the PMSI notification was not signed, and thus, was not "authenticated." CDF acknowledges that its "Notification of PMSI" to FFB was**

unsigned (doc. no. 17-7 "Ex. G," CDF's Responses to Requests for Admission, Nos. 4, and 5), but correctly points out that Ohio adopted the Revised UCC in 2006 and that a PMSI notification <u>does not require a signature</u> in order to be "authenticated." CDF points out that the version of the statute applicable here provides for authentication in other ways. Specifically, Ohio's statute defines the term "authenticate" as meaning:

> (a) To sign; or
> (b) To execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.

Ohio R.C. § 1309.102(7) (as amended in 2006, effective June 30, 2006).

CDF asserts that its PMSI notification fully satisfied the requirements of (b) above because: (1) it issued a written notice to FFB as a Lakota creditor; (2) the notice was on CDF Commercial Distribution Corporation letterhead; (3) the notice contained CDF's full name and address; and (4) the notice contained a description of the collateral in accordance with Ohio R.C. § 1309.108; and 5) the notice was sent by certified mail return receipt requested. FFB admittedly received the notification.

In reply, FFB acknowledged that the relevant law had been amended (doc. no. 20 at 4), but asserts that CDF's "Notification of PMSI" was not "otherwise authenticated" as defined by R.C. § 1309.102(A)(7)(b). FFB contends that CDF did not "adopt a symbol" or otherwise "encrypt" the record sufficiently to constitute authentication (doc. no. 20 at 4). FFB's rather conclusory assertion is unexplained and appears to be based on an incomplete reading of the statutory language.

Although FFB complains that the "Name" and "Title" lines were "left empty" on the PMSI notification, the statute does not require a signature to be valid. The PMSI notification listed CDF's full company name and address, identified the relevant department of CDF ("Attn: Marine Credit Department"), and listed categories of collateral subject to the PMSI, including "new and used boats." Plaintiff cites no relevant authority for the notion that CDF's PMSI notification was not "otherwise authenticated."

To the extent FFB asserts that the PMSI notification did not sufficiently describe the collateral, FFB's assertion is entirely conclusory. FFB merely contends "it is beyond dispute that [CDF's] Notification fails to provide a detailed description fo the collateral, here the Boats" (doc. no. 17 at 8). Generally, a creditor must adequately identify the collateral in order to claim PMSI priority. Although FFB generally cites Absolute Machine Tools, Inc. v. Liberty Precision Industries, Ltd., 2009 WL 2858092, *2 (Ohio App. 9 Dist.), appeal not allowed, 124 Ohio St.3d 1444 (2010), such case merely indicated that O.R.C. § 1309.324 requires a competing creditor to send a detailed notification to other creditors with conflicting security interests. Id. at ¶ 11. As CDF points out, the holding of such case concerned the requirement that a creditor actually send the notification, rather than the sufficiency of any description of collateral.

In the present case, the PMSI notification (see doc. nos. 17-5, 19-3) sent by CDF indicated that "all of the below described inventory shall apply" and then listed various categories, including "marine products, including but not limited to new and

used boats, boat trailers, outboard and inboard motors, canoes, sailboats, shore stations, wet bikes, personal watercraft, outdrivers, rafts, marine accessories, and parts and equipment."

FFB does not explain why such description would allegedly be insufficient to identify the collateral. See O.R.C. § 1309.108 (providing that "a description of collateral reasonably identifies the collateral if it identifies the collateral by: ...(2) category"). The Official Comment to O.R.C. § 1309.108 indicates that "courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called "serial number" test." Id.

Here, CDF's PMSI notification reasonably identified the collateral ("new and used boats." See Key Bank Nat. Association v. Huntington Nat. Bank, 2002 WL 701941 (Ohio App. 9 Dist.) (reversing summary judgment for first creditor because second creditor's description of collateral as "equipment" was sufficient identification to establish a PMSI). There, the Court observed that under Ohio law, "any description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described." Id.

## V. Conclusion

In conclusion, CDF's "Notification of PMSI" adequately identified the subject collateral and complied with Ohio's statutory requirements for authentication. Therefore, CDF's PMSI interest in the three boats has priority over FFB's previously-filed security interest as a matter of law.

**VI. Oral Argument Not Warranted**

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the issues and have not requested oral argument. The Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted. <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); see also, e.g., <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (reiterating that "district courts may dispense with oral argument on motions for any number of sound judicial reasons" and finding that the district court acted within its authority).

Accordingly, the plaintiff's "Motion for Summary Judgment" (doc. no. 17) is DENIED; summary judgment is GRANTED to defendant, with costs to plaintiff; this case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

                                                     s/Herman J. Weber  
                                          Herman J. Weber, Senior Judge  
                                          United States District Court